UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:   ARTHUR LEE BOSTICK,                          No. 23-10011-j7

         Debtor.

JEFFREY BROOKHOUSER and
JANELLE BROOKHOUSER,

         Plaintiffs,

v.                                                    Adversary No. 23-1006-j

ARTHUR BOSTICK d/b/a
ART'S IN 3D,

         Defendant.

## <u>MEMORANDUM OPINION</u>

The Court is confronted with whether a State Court's findings supporting liability under a

state statute can be given preclusive effect to establish non-dischargeability under 11 U.S.C.

§ 523(a)(2)(A)[1] where the findings sufficiently establish the non-dischargeable nature of the

debt, but the state statute does not require proof of all non-dischargeability elements. The Court

must also determine whether, if the compensatory damages are non-dischargeable, the exemplary

damages, attorney's fees, and costs awarded by the State Court under the state statute as well as

the attorney's fees and costs Plaintiffs incurred in prosecuting this non-dischargeability action

are part of the non-dischargeable debt.

A State Court entered a judgment in favor of Plaintiffs Jeffrey Brookhouser and Janelle

Brookhouser and against Defendant Arthur Bostick under the New Mexico Unfair Practices Act,

NMSA 1978, §§ 57-12-1 to 26 ("NMUPA"), based on common law fraud and on other grounds.

---

[1] All future statutory references are to Title 11 of the United States Code, unless otherwise specified.

After a trial on the merits, the State Court made detailed findings of fact and conclusions of law determining, among other things, that 1) Defendant falsely held himself out as a residential designer who was competent to design the residence and prepare the drawings, 2) Plaintiffs had no knowledge or experience of the residential design industry, 3) in reliance upon Defendant's representations and omissions as to his purported design services and his other false or misleading statements, Plaintiffs retained Defendant to design and prepare drawings for the construction of a residence, 4) Defendant intended that Plaintiffs rely on his misrepresentations or omissions by engaging his services and took advantage of Plaintiffs' lack of knowledge and experience in the residential design industry to a grossly unfair degree, 5) Defendant failed to produce a competent design or to complete construction drawings for Plaintiffs, and 6) Defendant overcharged Plaintiffs for his services.

Plaintiffs filed an Amended Motion for Summary Judgment ("Motion" - Doc. 16) on their non-dischargeability claim against Defendant under § 523(a)(2)(A) for false pretenses, false representation, or actual fraud. Plaintiffs assert the preclusive effect of the State Court judgment and the findings of fact and conclusions of law on which it is based entitle them to summary judgment.

Having reviewed the Motion and supporting documentation in light of the applicable issue preclusion standards, Defendant's response (Doc. 23), and Plaintiffs' reply (Doc. 24), the Court concludes that the final judgment and related amended findings and conclusions have issue preclusive effect and satisfy all the required non-dischargeability elements necessary to establish liability under § 523(a)(2)(A). Further, the damages fixed in the final judgment entered by the State Court are traceable to the non-dischargeable conduct and establish the amount of the non-dischargeable debt. Plaintiffs are not, however, entitled to recover attorneys' fees or costs

incurred in prosecuting this adversary proceeding as part of the non-dischargeable judgment. The Court will, therefore, grant the Motion, in part, and enter summary judgment in favor of Plaintiffs.

PROCEDURAL HISTORY

Defendant filed a voluntary petition under chapter 7 of the Bankruptcy Code on January 9, 2023. Before Defendant filed his chapter 7 bankruptcy case, Plaintiffs obtained a judgment ("Original Judgment") against Defendant in a state court action styled *Brookhouser v. Bostick,* Case No. D-1329-CV02018-01614, filed in the Thirteenth Judicial District, State of New Mexico, County of Sandoval (the "State Court Action").

Plaintiffs timely filed a complaint against Defendant on February 27, 2023, asserting a non-dischargeability claim under § 523(a)(2)(A) premised on false pretenses, a false representation, or actual fraud. *See* Doc. 1. Plaintiffs then filed a motion for summary judgment (Doc. 8), asserting that the Original Judgment against Defendant entered in the State Court Action is entitled to preclusive effect on their non-dischargeability claim under § 523(a)(2)(A). Defendant filed a response to the motion for summary judgment (Doc. 9), and Plaintiffs filed reply (Doc. 10). Following a status conference, the Court determined that the Original Judgment was not a final judgment because it did not adjudicate all claims pending in the State Court Action. *See* Order Resulting from Status Conference ("Order" – Doc. 13). The Court also noted in its Order that many of Plaintiffs' numbered material facts in their motion for summary judgment began with the language, "Judge Eichwald in the State Court Action found." *Id.* Defendant's counsel clarified at the status conference that by not contesting those numbered material facts, Defendant was merely admitting that Judge Eichwald made those findings but reserved the right to object to the merits of the findings. The Court modified the automatic stay

and fixed a deadline for Plaintiffs to return to State Court to request the State Court to either 1) make the Original Judgment a final judgment, or 2) adjudicate all other claims asserted in the State Court Action based on the existing evidence presented at trial that resulted in the Original Judgment and related findings and conclusions and enter an amended final judgment. *Id.* The Court also fixed a deadline for Plaintiffs to file a report in this adversary proceeding following entry of a final judgment in the State Court Action. *Id.*

Plaintiffs filed a status report (Doc. 14), attaching a copy of Plaintiffs' Second Amended Proposed Findings of Fact and Conclusions of Law ("Amended Findings and Conclusions")[2] and a copy of the Second Amended Final Judgment ("Final Judgment") entered in the State Court Action. *See* Doc. 14-1 and Doc. 14-2. The Final Judgment specifically adopted the Amended Findings and Conclusions as part of the State Court's Final Judgment. Plaintiffs filed the instant Motion based on the Amended Findings and Conclusions and the Final Judgment. Following another status conference, the Court fixed response and reply deadlines. *See* Doc. 22. With the assistance of additional counsel who entered a limited appearance in this adversary proceeding (Doc. 20), Defendant filed a response to the Motion (Doc. 23). Plaintiffs filed a reply (Doc. 24) on February 26, 2024, and the Court took the matter under advisement.

## SUMMARY JUDGMENT STANDARDS

Summary judgment will be granted when the movant demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), made applicable to adversary proceedings by Fed. R. Bankr. P. 7056. The "party seeking summary judgment always bears the initial responsibility of informing

---

[2] Even though the document is titled Plaintiffs' Second Amended Proposed Findings of Fact and Conclusions of Law, the Amended Findings and Conclusions were signed by the State Court judge and entered by the State Court. *See* Doc. 14-1.

the . . . court of the basis for its motion, and . . . demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Bacchus Indus. v. Arvin Indus.,* 939 F.2d 887, 891 (10th Cir. 1991) ("The moving party has the initial burden to show 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex Corp.*, 477 U.S. at 325)).

When determining whether summary judgment should be granted, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990)); *see also Genberg v. Porter*, 882 F.3d 1249, 1253 (10th Cir. 2018) (same). Even so, "[a]ll facts in movant's statement of facts that are properly supported shall be deemed admitted unless respondent specifically controverts them." NM LBR 7056-1(b). Under this standard, summary judgment is appropriate "if the evidence points only one way and no reasonable inferences could support the non-moving party's position." *Genberg*, 882 F.3d at 1253.

## FACTS NOT SUBJECT TO GENUINE DISPUTE

Defendant did not contest any of the numbered facts stated in the Plaintiffs' Statement of Undisputed Material Facts ("SUF") set forth in the Motion.[3] The facts not subject to genuine dispute include the following:

---

[3] Defendant conceded that "the recitation of facts is consistent with the Second Amended Findings of Fact and Conclusions of Law filed in the State Court Action on August 31, 2023." Response (Doc. 23), p. 2. Instead of reciting facts and relying on the State Court's findings to establish the facts, many of the numbered facts in Plaintiffs' Statement of Undisputed Material Facts ("SUF") listed in the Motion perpetuate the same problem the Court previously pointed out to Plaintiffs' counsel inasmuch as the numbered facts begin with the phrase, "[t]he State Court found." *See, e.g.,* Motion (Doc. 16), ¶¶ 107 – 150. If the only "facts" not in genuine dispute were that the State Court made certain findings, Plaintiffs would not be entitled to summary judgment. But because Plaintiffs' Motion is premised on the preclusive

A.    Plaintiffs filed the State Court Action against Defendant asserting claims for breach of contract, breach of the covenant of good faith and fair dealing, violation of the NMUPA, common law fraud, negligent misrepresentation, promissory estoppel, and unjust enrichment.[4]

B.    The State Court held a bench trial in the State Court Action.[5]

C.    Defendant attended the trial in the State Court Action, called his own witnesses, and was permitted to cross examine the Plaintiffs and the witnesses Plaintiffs called to testify in the State Court Action.[6]

D.    The State Court entered Amended Findings and Conclusions based on the evidence presented at trial in the State Court Action.[7]  Among other things, the State Court found:

    1.    In late 2017, Plaintiffs were planning for the construction of a new residence in Rio Rancho, New Mexico and were in search of a designer who could provide construction drawings for the residence. [8]

    2.    In October 2017, during the Parade of Homes, Defendant set up a computer display at a model home constructed by Sun Mountain showing 3D models of Sun Mountain's home designs.[9]

---

effect of the Amended Findings and Conclusions and the Final Judgment, and because Defendant agrees the State Court made the findings and has not contested any of the facts found by the State Court, the Court will treat the facts themselves as not in genuine dispute for purposes of applying issue preclusion. Defendant did not identify any numbered SUF that Defendant contends is in material dispute.
[4] SUF, ¶ 3.
[5] SUF, ¶ 6.
[6] SUF, ¶ 7.
[7] SUF, ¶ 9.
[8] SUF, ¶ 11; Amended Findings and Conclusions (Doc. 14-1), p.1, ¶ 1.
[9] SUF, ¶ 19; Amended Findings and Conclusions (Doc. 14-1), p. 2, ¶ 9.

3.     Plaintiff Janelle Brookhouser visited the Sun Mountain model during the Parade of Homes.[10]

4.     Jeff and Janelle had no knowledge or experience of the residential design industry.[11]

5.     When Plaintiff Janelle Brookhouser met Defendant, she advised him that Plaintiffs were looking for a designer to prepare construction drawings for their new residence and that she wanted a design similar to that of the Sun Mountain model.[12]

6.     Defendant was in the business of 3D modeling.[13]

7.     Defendant was not in the business of residential design.[14]

8.     Defendant showed Plaintiff Janelle Brookhouser 3D models of Sun Mountain's designs, and, despite not being in the business of residential design, represented that he could design and provide construction drawings for similar homes.[15]

9.     Defendant's display contained no indication of the distinction between 3D modeling and construction design.[16]

10.     Defendant represented that he had designed "thousands' of homes, without disclosing that he was not in the residential design industry and had designed zero homes in the past 15 years.[17]

11.     Defendant offered to provide home design services for Plaintiffs, namely, the preparation of construction drawings for their residence.[18]

---

[10] SUF, ¶ 21; Amended Findings and Conclusions (Doc. 14-1), p. 2, ¶ 11.
[11] SUF, ¶ 12; Amended Findings and Conclusions (Doc. 14-1), p. 1, ¶ 2.
[12] SUF, ¶ 22; Amended Findings and Conclusions (Doc. 14-1), p. 2, ¶ 12.
[13] SUF, ¶ 13; Amended Findings and Conclusions (Doc. 14-1), p. 1, ¶ 3.
[14] SUF, ¶ 14; Amended Findings and Conclusions (Doc. 14-1), p. 1, ¶ 4.
[15] SUF, ¶ 23; Amended Findings and Conclusions (Doc. 14-1), p.2, ¶ 13.
[16] SUF, ¶ 24; Amended Findings and Conclusions (Doc. 14-1), p.2,¶ 14.
[17] SUF, ¶ 33; Amended Findings and Conclusions (Doc. 14-1, p. 4, ¶ 23.
[18] SUF, ¶ 25; Amended Findings and Conclusions (Doc. 14-1), p. 2, ¶ 15.

12.     In offering to prepare construction drawings for Plaintiffs, Defendant did not disclose that he was not in the residential design business.[19]

13.     Under the circumstances, Defendant's display and nondisclosures suggested that he had, in fact, designed the Sun Mountain model and was in the business of home design, and Plaintiff Janelle Brookhouser believed that was the case.[20]

14.     Defendant did not design any residence for Sun Mountain.[21]

15.     In reliance upon Defendant's representations and omissions as to his purported design services, Plaintiffs decided to retain Defendant to design and prepare construction drawings for their home.[22]

16.     Plaintiffs paid Defendant a deposit of $2,500.[23]

17.     Plaintiffs paid Defendant a total of $12,065.[24]

18.     Defendant made false or misleading statements in connection with the sale of 3D modeling and/or residential design services in the regular course of Defendant's trade or commerce.[25]

19.     Defendant made a false or misleading statement when he told Plaintiffs that 3D modeling is an "integral" part of the preparation of construction drawings.[26]

20.     Defendant represented to Plaintiffs that he had a status (residential designer) that he does not in fact have.[27]

---

[19] SUF, ¶ 29; Amended Findings and Conclusions (Doc. 14-1, p. 3, ¶ 19.
[20] SUF, ¶ 30; Amended Findings and Conclusions (Doc. 14-1), p. 3, ¶ 20.
[21] SUF, ¶ 16; Amended Findings and Conclusions (Doc. 14-1), p.1, ¶ 6.
[22] SUF, ¶ 39; Amended Findings and Conclusions (Doc. 14-1), p.4, ¶ 29.
[23] SUF, ¶ 52; Amended Findings and Conclusions (Doc. 14-1), p. 6, ¶ 42.
[24] SUF, ¶ 57;  Amended Findings and Conclusions (Doc. 14-1), p. 6, ¶ 47.
[25] SUF, ¶ 109; Amended Findings and Conclusions (Doc. 14-1), p. 12, ¶ 10.
[26] SUF, ¶ 110; Amended Findings and Conclusions (Doc. 14-1), p. 12, ¶ 10(a).
[27] SUF, ¶ 124; Amended Findings and Conclusions (Doc. 14-1), p. 14, ¶ 17.

-8-

21.     Defendant failed to disclose material facts reasonably necessary to prevent statements that he made to Plaintiffs from being misleading when he failed to disclose to Plaintiffs that he did not design any home in the 15 years prior to meeting the Plaintiffs.[28]

22.     Defendant failed to disclose material facts reasonably necessary to prevent statements he made to Plaintiffs from being misleading when he failed to disclose to Plaintiffs that he was not in the residential design business but was only in the 3D modeling business.[29]

23.     Defendant failed to disclose material facts reasonably necessary to prevent statements that he made to Plaintiffs from being misleading when he displayed designs that he did not prepare and represented to Plaintiffs that he could prepare similar designs when in fact he could not.[30]

24.     Defendant failed to disclose material facts reasonably necessary to prevent statements that he made to Plaintiffs from being misleading when he failed to tell Plaintiffs that he did not design the Sun Mountain model or any home for Sun Mountain.[31]

25.     Defendant knew or should have known that such statements or omissions were false or misleading.[32]

26.     Defendant used exaggeration, innuendo or ambiguity as to a material fact or failed to state a material fact where doing so deceived or tended to deceive.[33]

27.     Defendant made untrue statements of fact or failed to disclose material facts to Plaintiffs.[34]

---

[28] SUF, ¶ 117; Amended Findings and Conclusions (Doc. 14-1), p. 13, ¶ 11(b).
[29] SUF, ¶ 118; Amended Findings and Conclusions (Doc. 14-1), p. 13, ¶ 11(c).
[30] SUF,¶ 119; Amended Findings and Conclusions (Doc. 14-1), p. 13, ¶ 12.
[31] SUF, ¶ 116; Amended Findings and Conclusions (Doc. 14-1), p. 13, ¶ 11(a).
[32] SUF, ¶ 121; Amended Findings and Conclusions (Doc.14-1), p. 14, ¶ 14.
[33] SUF, ¶ 126; Amended Findings and Conclusions (Doc. 14-1), p. 14, ¶ 19.
[34] SUF, ¶ 139; Amended Findings and Conclusions (Doc. 14-1), p. 16, ¶ 30.

28.     Defendant made one or more false statements of fact or failed to disclose material facts to Plaintiffs.[35]

29.     Defendant's false or misleading statements or omissions may have, tended to, or did deceive or mislead any person, including Plaintiffs.[36]

30.     Defendant had no reasonable grounds for believing that his negligent misrepresentations were true.[37]

31.     Defendant intended Plaintiffs to rely on such statements or omissions.[38]

32.     Defendant intended to induce Plaintiffs' reliance on his misrepresentations or omissions by engaging his services.[39]

33.     Defendant took advantage of Plaintiffs' lack of knowledge and experience in the residential design industry to a grossly unfair degree.[40]

34.     Plaintiffs relied upon Defendant's representations and omissions as to his purported design services and decided to retain Defendant to design and prepare construction drawings for their home.[41]

35.     Plaintiffs relied upon Defendant's statements or omissions by engaging Defendant to provide residential design services.[42]

---

[35] SUF, ¶ 133; Amended Findings and Conclusions (Doc. 14-1), p. 15, ¶ 25.
[36] SUF, ¶ 122; Amended Findings and Conclusions (Doc. 14-1), p. 14, ¶ 15.
[37] SUF, ¶ 140; Amended Findings and Conclusions (Doc. 14-1), p. 16, ¶ 31.
[38] SUF, ¶ 141; Amended Findings and Conclusions (Doc. 14-1), p. 16, ¶ 32.
[39] SUF, ¶ 135; Amended Findings and Conclusions (Doc. 14-1), p. 15, ¶ 27.
[40] SUF, ¶ 129; Amended Findings and Conclusions (Doc. 14-1), p. 15, ¶ 22.
[41] SUF, ¶ 39; Amended Findings and Conclusions (Doc. 14-1), p. 4, ¶ 29.
[42] SUF, ¶ 142; Amended Findings and Conclusions (Doc. 14-1), p. 16, ¶ 33.

36.     Had Plaintiffs known that Defendant was not in the residential design business, had not prepared any construction drawings in the previous 15 years, and had not designed the Sun Mountain model, they would not have retained his services.[43]

37.     Plaintiffs relied on Defendant's misrepresentations to their detriment by engaging Defendant to provide residential design services.[44]

38.     Defendant willfully engaged in unconscionable trade practices.[45]

39.     Defendant's conduct was malicious, willful, reckless, wanton, fraudulent, or in bad faith.[46]

40.     Defendant knowingly benefitted at Plaintiffs' expense in the amount of $12,065.[47]

E.      In the Amended Findings and Conclusions, the State Court concluded that Defendant was liable based on breach of contract, breach of a covenant of good faith and fair dealing, unfair or deceptive trade practices in violation of the NMUPA, unconscionable trade practices in violation of the NMUPA, fraud, negligent misrepresentation, promissory estoppel, and unjust enrichment.[48]

F.      In the Amended Findings and Conclusions, the State Court awarded Plaintiff a total of $47,226.64 of damages, consisting of $12,065.00 in actual damages, plus an additional $12,065.00 in exemplary damages under NMSA 1978, § 57-1210(B) of the NMUPA, $22,441.26 in attorney's fees, and $655.38 in costs.[49]

---

[43] SUF, ¶ 40; Amended Findings and Conclusions (Doc. 14-1),  p. 4, ¶ 30.
[44] SUF, ¶ 136; Amended Findings and Conclusions (Doc. 14-1), p. 16, ¶ 28.
[45] SUF, ¶ 128; Amended Findings and Conclusions (Doc. 14-1), p. 15, ¶ 21.
[46] SUF, ¶ 137; Amended Findings and Conclusions (Doc. 14-1), p. 16, ¶ 29.
[47] SUF, ¶ 149; Amended Findings and Conclusions (Doc. 14-1), p. 17, ¶ 39.
[48] SUF, ¶ 156 ("On August 31, 2023, the State Court entered its Second Amended Findings of Fact and Conclusions of Law, in which each of Plaintiffs' claims for relief against Defendant were fully adjudicated."); Amended Findings and Conclusions (Doc. 14-1), pp. 11, 12, 15, 16, and 17.
[49] SUF, ¶ 153; Amended Findings and Conclusions (Doc. 14-1), p. 17, ¶¶ 41 and 42.

G.     In the Final Judgment entered on August 31, 2023, resulting from the Amended Findings and Conclusions, the State Court granted judgment in favor of Plaintiffs and against Defendant in the amount of $47,226.64, consisting of $24,130.00 in compensatory damages, plus $22,441.26 in attorney's fees and $655.38 in costs, with interest accruing on the judgment at 8.75% per annum.[50]

DISCUSSION

A. *Issue Preclusion*[51]

Issue preclusion, also known as collateral estoppel, may be invoked to bar relitigation of issues of fact determined in a prior state court action resulting in a final judgment to establish the non-dischargeability of a particular debt in a subsequent bankruptcy case. *Klemens v. Wallace* (*In re Wallace*), 840 F.2d 762, 764 (10th Cir. 1988).[52] To determine the preclusive effect of a state court judgment, the bankruptcy court applies the law of the state in which the judgment was rendered. *See Sanders v. Crespin (In re Crespin)*, 551 B.R. 886, 895 (Bankr. D.N.M. 2016) ("In bankruptcy court, the general rule is that the court 'must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984))).

Issue preclusion under New Mexico law requires satisfaction of the following elements:

---

[50] SUF, ¶ 157; Final Judgment (Doc. 14-2).

[51] Defendant does not dispute the *claim* preclusive effect of the Final Judgment issued by the State Court to establish the debt owing by Defendants to Plaintiff under state law. The only issue before this Court is whether the *issue* preclusive effect of the Final Judgment establishes that the debt is nondischargeable under § 523(a)(2)(A).

[52] *See also Grogan v. Garner,* 498 U.S. 279, 285 n.11 (1991) ("[C]ollateral estoppel [issue preclusion] principles do indeed apply in discharge exception proceedings pursuant to § 523(a).");  *Taylor v. Jasper (In re Jasper)*, 356 B.R. 787, No. NM-06-092, 2007 WL 390287, at *3 (10th Cir. BAP 2007) (Table) ("Collateral estoppel [issue preclusion] may be applied in bankruptcy proceedings to determine dischargeability of a debt."), *aff'd,* 312 F. App'x 97 (10th Cir. 2008).

-12-

    1) the parties in the first suit must be the same or in privity with the parties in the second suit;
    2) the second suit asserts a different cause of action than the first suit;
    3) the issue or fact was actually litigated in the first suit; and
    4) the issue was necessarily determined in the first suit.

*Blea v. Sandoval,* 1988-NMCA-036, ¶ 18, 107 N.M. 554, 559, 761 P.2d 432, 437.[53]

If the party seeking to apply issue preclusion satisfies these four elements, the burden shifts to party opposing issue preclusion "to show that he or she was not afforded a full and fair opportunity to litigate the issue in the prior proceeding." *Salguero v. City of Clovis*, 366 F.3d 1168, 1173 (10th Cir. 2004) (quoting *Padilla v. Intel Corp.*, 1998-NMCA-125, ¶ 9, 125 N.M. 698, 701, 964 P.2d 862, 865). *See also Sergejev v. Alderman (In re Alderman)*, Adv. No. 20-1003-j, 2021 WL 866691, at *5 (Bankr. D.N.M. Mar. 8, 2021) (issue preclusion requires that the opposing party had a full and fair opportunity to litigate in the prior action).

In *Wallace*, the Tenth Circuit addressed the issue preclusive effect of a prepetition New Mexico state court judgment in a non-dischargeability action commenced in the judgment debtor's bankruptcy case. *Wallace*, 840 F.2d at 764. The issue before the Tenth Circuit was "whether the state court's judgment that Wallace [the debtor] intentionally embezzled funds entrusted to him was binding on the bankruptcy court and barred relitigation in the dischargeability action on the issue of whether the debt owing to Klemens [the creditor] was a debt for embezzlement, rendering the debt nondischargeable under section 523(a)(4)." *Id.* Affirming the bankruptcy court's grant of summary judgment determining the debt to be

---

[53] *See also Shovelin v. Cent. N.M. Elec. Coop., Inc.,* 1993-NMSC-015, ¶ 10, 115 N.M. 293, 297, 850 P.2d 996, 1000 (elements of issue preclusion are: "(1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation."); *Ideal v. Burlington Res. Oil & Gas Co.*, 2010-NMSC-022, ¶ 9, 148 N.M. 228, 231–32, 233 P.3d 362, 365–66 (same).

nondischargeable based on the preclusive effect of the State Court judgment, the Tenth Circuit stated:

> [C]ollateral estoppel is binding on the bankruptcy court and precludes relitigation of factual issues if (1) the issue to be precluded is the same as that involved in the prior state action, (2) the issue was actually litigated by the parties in the prior action, and (3) the state court's determination of the issue was necessary to the resulting final and valid judgment.

*Wallace*, 840 F.2d at 765.[54]

Defendant agrees that the Final Judgment is a final judgment, that the parties in the State Court Action are the same as the parties in this adversary proceeding, and that the non-dischargeability claim asserted in this adversary proceeding is different than the claims asserted in the State Court Action. Defendant also concedes that he had a full and fair opportunity to litigate the claims in the State Court Action.

In his Response to the motion for summary judgment, Defendant states: "The only issue for this Court to consider is what specific issues were actually litigated in the prior case and which were not litigated."[55] After observing generally that several of the claims asserted in the State Court Action, such as the claim for breach of contract and the claim for breach of the covenant of good faith and fair dealing, are claims that are clearly dischargeable, Defendant's argument focuses on the claims under the NMUPA. Defendant contends that issue preclusion does not apply because various issues that must be decided to determine dischargeability under § 523(a)(2)(A) were not actually litigated in the State Court Action that adjudicated claims under the NMUPA.

---

[54] *See also In re Putvin,* 332 B.R. 619, 624 (10th Cir. BAP 2005) ("[I]ssue preclusion is a doctrine that prohibits the relitigation between the same parties of issues of ultimate fact that have been 'determined by a valid and final judgment'" (quoting *Phelps v. Hamilton,* 122 F.3d 1309, 1318 (10th Cir. 1997)).
[55] Response (Doc. 23) at p. 4.

-14-

B. *Non-dischargeability under § 523(a)(2)(A)*

Debts "for money, property, [or] services, . . . to the extent obtained by . . . false

pretenses, a false representation, or actual fraud," are non-dischargeable under § 523(a)(2)(A).

To prevail on a non-dischargeability claim under § 523(a)(2)(A) based on a false representation

or false pretense, where, as here, there is no issue about an innocent debtor's nondischargeable

liability for a fraud perpetrated by a third party,[56] a plaintiff must establish the following

elements by a preponderance of the evidence:[57]

     (a) the debtor made a false representation;

     (b) the debtor made the representation with the intent to deceive the creditor;

     (c) the creditor relied on the representation;

     (d) the creditor's reliance was [justifiable];[58] and

     (e) the debtor's representation caused the creditor to sustain a loss.

*Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996).[59]

False representations within the meaning of § 523(a)(2)(A) are express

misrepresentations. *Bank of Cordell v. Sturgeon (In re Sturgeon)*, 496 B.R. 215, 223 (10th Cir.

BAP 2013) (distinguishing false pretenses from false representations). In contrast, "[f]alse

pretenses under Section 523(a)(2)(A) are implied misrepresentations intended to create and

---

[56] The Court included this limitation in light of *Bartenwerfer v. Buckley*, 598 U.S. 69 (2023), which holds that in certain circumstances a debt may be nondischargeable under § 523(a)(2)(A) as to an innocent debtor.

[57] *See Grogan,* 498 U.S. at 287 (establishing preponderance of the evidence standard for non-dischargeability claims).

[58] *Field v. Mans*, 516 U.S. 59, 74 (1995) (holding that the standard of reliance is "justifiable, but not reasonable, reliance"); *In re Johnson v. Riebesell (In re Riebesell)*, 589 F.3d 782, 791 (10th Cir. 2009) ("[T]he inquiry is whether the actual creditor's reliance was 'justifiable' from a subjective standpoint.").

[59] The *Young* formulation of the non-dischargeability elements under § 523(a)(2)(A) applies to non-dischargeability claims based on false pretenses and affirmative misrepresentations, including inducement based actual fraud claims. However, claims for actual fraud that are not inducement based do not require the creditor to prove reliance. *Husky Int'l Elecs., Inc. v. Ritz* 578 U.S. 355, 365-66 (2016).

-15-

foster a false impression." *Id.* False pretenses include material omissions,[60] and "can be 'defined as any series of events, when considered collectively, that create a contrived and misleading understanding of a transaction, in which a creditor is wrongfully induced to extend money or property to the debtor.'" *Sturgeon*, 496 B.R. at 223 (quoting *Stevens v. Antonious (In re Antonious)*, 358 B.R. 172, 182 (Bankr. E.D. Pa. 2006)). A debtor's intent to deceive the creditor may be inferred by the Court based on the totality of the circumstances. *Sturgeon*, 496 B.R. at 222 (citing *Copper v. Lemke (In re Lemke)*, 423 B.R. 917, 922 (10th Cir. BAP 2010)).

C. *The elements necessary to sustain a claim for violation of the NMUPA are not identical to the elements necessary to establish non-dischargeability under § 523(a)(2)(A)*

Defendant asserts that the elements necessary to sustain a claim for violation of the NMUPA are not identical to the elements necessary to establish non-dischargeability under § 523(a)(2)(A) because the NMUPA does not require a specific intent to defraud, reasonable reliance, or proof that Plaintiffs were damaged by the unfair practice, all of which (according to Defendant) must be established to prove that a debt is nondischargeable under § 523(a)(2)(A).

Defendant is correct that a successful claim under the NMUPA does not automatically establish non-dischargeability under § 523(a)(2)(A). Violation of the NMUPA requires proof of "a false or misleading oral . . . statement . . . knowingly made in connection with the sale . . . of services . . . by a person in the regular course of the person's trade or commerce, that may, tends to, or does deceive or mislead any person."  NMSA 1978, § 57-12-2(D). *See also Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶ 5, 142 N.M. 437, 439, 166 P.3d 1091, 1093 (A

---

[60] *See Gross v. Osborne (In re Osborne)*, 520 B.R. 861, 869 (Bankr. D.N.M. 2014) ("A debtor's failure to disclose material facts is actionable as a false representation or false pretense under § 523(a)(2)(A)."); *The William S. Barne, M.D. P.C. Retirement Fund v. Perkins (In re Perkins)*, 298 B.R. 778, 788 (Bankr. D. Utah 2003) ("A false pretense as used in § 523(a)(2)(A) includes material omissions, and means 'implied misrepresentations or conduct intended to create and foster a false impression.'" (quoting *Peterson v. Bozzano (In re Bozzano)*, 173 B.R. 990, 993 (Bankr. M.D.N.C. 1994) (abrogated on other grounds)).

claim under the NMUPA requires proof that "(1) the defendant made an oral or written statement, a visual description or a representation of any kind that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale, lease, rental, or loan of goods or services in the regular course of the defendant's business; and (3) the representation was of the type that may, tends to, or does deceive or mislead any person.").

To constitute a violation of the NMUPA, a person must have knowingly made the false or misleading statement, but there is no statutory requirement that the person have specific intent to deceive the creditor. In addition, a claimant "need not prove that [he or] she relied on Defendant's purported deceptive conduct in order to recover" under the NMUPA. *Smoot v. Physicians Life Ins. Co.,* 2004-NMCA-027, ¶ 21, 135 N.M. 265, 271, 87 P.3d 545, 551). Thus, a successful claim for violation of the NMUPA does not necessarily establish that the resulting debt is nondischargeable under § 523(a)(2)(A) because two of the four elements necessary to sustain a claim under § 523(a)(2)(A), namely, proof of defendant's intent to deceive the plaintiff, and proof of plaintiff's justifiable reliance, are not required elements to prove a claim under the NMUPA.

Defendant argues further that an award of exemplary damages under the NMUPA does not require specific intent to deceive or proof of reliance, and points out that an award of attorney's fees and costs under the NMUPA merely requires that the Plaintiffs prevail. Defendant is again correct that entitlement to exemplary damages under the NMUPA does not require proof of a specific intent to harm or reliance. An exemplary damages award under the NMUPA requires proof that the defendant "willfully engaged" in the unconscionable trade practice. NMSA 1978, § 57 12-10B. A violation is willful if the act is done intentionally with knowledge that harm may result. *Atherton v. Gobin,* 2015-NMCA-003, ¶ 54, 340 P.3d 630, 641. But proof

-17-

of a willful violation does not require proof of specific intent to harm. *Id.* And while recovery under the NMUPA requires a causal link between the deceptive practice and the claimant's loss, that causal connection does not require proof of detrimental reliance. *Smoot*, 2004-NMCA-027, ¶ 21, 135 N.M. at 270, 87 P.3d at 550 ("While . . . the UPA . . . require[s] proof of a causal link between conduct and loss . . . . it permits recovery even if the conduct only 'tends to deceive.'").

However, as explained below, simply because the NMUPA does not require proof of all of the elements necessary to establish non-dischargeability under § 523(a)(2)(A) does not mean that the Amended Findings and Final Judgment cannot be given preclusive effect to establish both the nature and the amount of the non-dischargeable debt in this proceeding.

D. *The Amended Findings and Conclusions resulting in the Final Judgment preclusively establish Plaintiff's non-dischargeability claim under § 523(a)(2)(A)*

Even though the elements necessary to sustain a claim for violation of the NMUPA are not identical to the elements necessary to establish non-dischargeability under § 523(a)(2)(A), Plaintiff nevertheless is entitled to summary judgment on its claim of non-dischargeability under § 523(a)(2)(A) based on the State Court's findings.

Simply because liability under a statute can be premised on conduct that does not rise to the level of non-dischargeable conduct under § 523(a)(2)(A) does not mean that a state court's findings resulting in a judgment under such statute cannot be based on conduct that satisfies the elements of a claim under § 523(a)(2)(A). As recognized by the First Circuit, even though the statutory claim adjudicated in state court was not synonymous with fraud under § 523(a)(2)(A), the state court findings made it clear "that the issue of fraud was actually litigated in the superior court, was a necessary component of the court's judgment, and was the same as the issue adjudicated in the section 523(a)(2) proceeding." *Stoehr v. Mohamed*, 244 F.3d 206, 208 (1st Cir. 2001) (per curiam). The *Stoehr* court thus concluded that the record in the state court amply

-18-

supported the conclusion that the state court's decision was based on defendant's fraudulent conduct and that the bankruptcy court correctly applied issue preclusion to establish non-dischargeability in the subsequent adversary proceeding. *Id.* [61]

Similarly, the First Circuit Bankruptcy Appellate Panel rejected the argument that adjudication of a claim under a state consumer protection act, which has a standard that is not identical to the non-dischargeability standard of § 523(a)(2)(A), necessarily prevents a court from applying issue preclusion to a state court judgment in the subsequent non-dischargeability action, concluding that "collateral estoppel [a/k/a issue preclusion] is appropriate where . . . the record so amply supports the state court's conclusions in the State Court Judgment based on the Debtor's fraudulent conduct." *Backlund v. Stanley-Snow (In re Stanley-Snow)*, 405 B.R. 11, 22 (1st Cir. BAP 2009) (per curiam). In *Stanley-Snow*, the state court record included findings that supported each non-dischargeability element under § 523(a)(2)(A), including numerous false representations, justifiable reliance on defendants' misrepresentations, and resulting damage, and it was clear that the state court judgment was based on defendant's fraudulent conduct. *Id.* [62]

Likewise, here, the State Court's Amended Findings and Conclusions support each non-dischargeability element under § 523(a)(2)(A), including false representations, false pretenses, justifiable reliance on Defendant's express and implied misrepresentations, and losses Plaintiffs sustained caused by Defendant's fraud. The Final Judgment was based on Defendant's fraudulent conduct. And the State Court's findings were necessarily made to conform the

---

[61] *See also* 18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4417 (3d ed. 2016) ("Once the issue actually decided has been identified, and it is shown that decision was treated as necessary, there is no need to inquire whether the first case could have been disposed of by resolving some narrower issue.").

[62] *See also Park Lake Res. L.L.C. v. U.S. Dep't. of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004) (explaining under federal issue preclusion law that "issue preclusion bars a party from relitigating an issue once it has suffered and adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim.").

-19-

findings with the evidence admitted at trial. That is a sufficient basis to establish non-dischargeability under § 523(a)(2)(A) even though the elements necessary to sustain a claim for violation of the NMUPA are not identical to the elements necessary to establish non-dischargeability under § 523(a)(2)(A).

  1.  *Defendant made a false representation, and/or engaged in false pretenses*

The Amended Findings and Conclusions included fact findings that Defendant made multiple false representations and material omissions to Plaintiffs, including: "Defendant did not disclose that he was not even in the residential design business;"[63] "Defendant represented that he had designed, 'thousands' of homes, without disclosing that he was not in the residential design industry and had design[ed] zero homes in the past 15 years;"[64] "Defendant made a false or misleading statement when he told Plaintiffs that 3D modeling is an 'integral' part of the preparation of construction drawings;"[65] and "Defendant represented to Plaintiffs that he had a status (residential designer) that he does not in fact have," implying he was competent to prepare the construction drawings.[66] These are all false statements or omissions of material fact. The Amended Findings and Conclusions, taken as a whole, also establish that Defendant engaged in false pretenses by setting up a display as part of the Parade of Homes that included a 3D model of a Sun Mountain home that he did not, in fact, design, suggesting that he could create a residential construction design and prepare construction drawings for Plaintiffs when, in reality, he was not a residential designer and was not competent to prepare the construction drawings.[67]

---

[63] Amended Findings and Conclusions (Doc. 14-1), p. 3, ¶ 19; SUF, ¶ 29.
[64] Amended Findings and Conclusions (Doc. 14-1), p. 4, ¶ 23; SUF, ¶ 33.
[65] Amended Findings and Conclusions (Doc. 14-1), p. 12, ¶ 10(a); SUF, ¶ 110.
[66] Amended Findings and Conclusions (Doc. 14-1), p. 14, ¶ 17; SUF, ¶ 124.
[67] *See* Amended Findings and Conclusions (Doc. 14-1), p. 3, ¶ 9; p. 2, ¶ 6; p. 3, ¶¶ 19-20; p. 13, ¶ 11(a); p. 14, ¶ 16; SUF, ¶¶ 14, 15, 29, 30, 116, and 124.

Finally, the Amended Findings and Conclusions include the conclusion that "Defendant made one or more untrue statements of fact or failed to disclose material facts [to Plaintiffs]."[68]

### 2. *Defendant intended to deceive Plaintiffs*

"[O]n summary judgment, a bankruptcy court may infer the facts required to support a judgment of nondischargeability—including that the debtor acted with the requisite mental state—from the totality of the circumstances described in a state court's findings." *Moyer v. Anthony (In re Anthony)*, 648 B.R. 556, 573 (Bankr. S.D. Ohio 2023); *see also In re Bane*, No. CC-09-1108-MoPaH, 2010 WL 6451886, at *8 n.13 (9th Cir. BAP Jan. 15, 2010) ("In the context of a summary judgment, a court may infer intent from the 'totality of the circumstances' described in another court's findings of fact.").

Here, the Amended Findings and Conclusions are so detailed and compounding that the Court may infer from the totality of the circumstances that Defendant intended to deceive Plaintiffs. *See Young*, 91 F.3d at 1375 ("[T]he debtor's intent to deceive the creditor in making false representations to the creditor, may be inferred from the totality of the circumstances, or from a knowingly made false statement." (internal quotation marks and citations omitted). "[T]he touchstone to finding of intent to deceive is the speaker's actual subjective state of mind—*i.e.,* the speaker's actual knowledge and belief—at the time the representation is made." *DSC Nat'l Props., LLC v. Johnson (In re Johnson)*, 477 B.R. 156, 170 (10th Cir. BAP 2012). As discussed in *Johnson*, per the Restatement (Second) of Torts (1976) defining "Conditions Under which Misrepresentation is Fraudulent (Scienter)," a misrepresentation is fraudulent if the speaker "knows or believes that the matter is not as he represents it to be,"[69] meaning that the "speaker is lying about the fact," or where the speaker "knows that he does not have the basis for his

---

[68] Amended Findings and Conclusions (Doc. 14-1), p. 15, ¶ 25; SUF, ¶ 133.
[69] Restatement (Second) of Torts (1976), § 526(a).

representation that he states or implies,"[70] meaning that "the speaker is *consciously aware* that he does not have the factual basis for the statement that he represents or implies that he has." *Johnson*, 477 B.R. at 170.

The Amended Findings and Conclusions easily satisfy this standard. The Amended Findings and Conclusions include findings that "Defendant had no reasonable ground for believing that his statements or omissions were true,"[71] that "Defendant used exaggeration, innuendo or ambiguity as to a material fact or failed to state a material fact where doing so deceived or tended to deceive,"[72] "Defendant's conduct was malicious, willful, reckless, wanton, fraudulent, or in bad faith," and that "Defendant intended for [Plaintiffs] to rely on such statements or omissions."[73] The Court infers from these fact findings that Defendant knew or was consciously aware that his representations to Plaintiffs regarding his experience and ability to create a construction design were false, and that Plaintiff made such statements with the intent for Plaintiffs rely on such statements. Those surrounding facts and circumstances establish that Defendant intended to deceive Plaintiffs. Finally, the Amended Findings and Conclusions include the conclusion that "Defendant intended to induce [Plaintiffs'] reliance on the misrepresentations or omissions by engaging his services."[74] This conclusion conclusively establishes Defendant's intent to deceive.

   3. *Plaintiffs justifiably relied on Defendant's representations and omissions*

The Amended Findings and Conclusions include more than one fact finding that Plaintiffs relied on Defendant's false representations and material omissions when they engaged

---

[70] Restatement (Second) of Torts (1976), § 526(c).
[71] Amended Findings and Conclusions (Doc. 14-1), p. 16, ¶ 31; SUF, ¶ 140.
[72] Amended Findings and Conclusions (Doc. 14-1), p. 14, ¶ 19; SUF, ¶ 126.
[73] Amended Findings and Conclusions (Doc. 14-1), p. 16, ¶ 32; SUF, ¶ 141.
[74] Amended Findings and Conclusions (Doc. 14-1), p. 15, ¶ 27; SUF, ¶ 135.

-22-

Defendant to prepare a residential construction design for their home.[75] The Amended Findings and Conclusions also conclude that Plaintiffs "relied upon the misrepresentations or omissions to their detriment."[76] The question, then, is whether the Amended Findings and Conclusions sufficiently establish that Plaintiffs' actual reliance was "justifiable."

Again, the Court "may review the entire record in the state court to determine the grounds for, or the meaning of, the state court's judgment or order," *Yust v. Henkel (In re Henkel)*, 490 B.R. 759, 781 (Bankr. S.D. Ohio 2013), and, on summary judgment, may infer based on the state court's fact findings the elements necessary to support a nondischargeability judgment. *Anthony*, 648 B.R. at 573. The Amended Findings and Conclusions, taken as a whole, are sufficient for the Court to infer that Plaintiffs justifiably relied on Defendant's false pretenses and false representations when they engaged Defendant to prepare a construction design for their home.

Justifiable reliance is a lesser standard than reasonable reliance, which demands an objective, "reasonable person" standard. *See Field v. Mans*, 516 U.S. 59, 70-71 (1995) (discussing the Restatement and observing that "a contrast between a justifiable and reasonable reliance is clear: 'Although the plaintiff's reliance on the misrepresentation must be justifiable . . . this does not mean that his conduct must conform to the standard of the reasonable man.'" (quoting Restatement (Second) of Torts (1976), § 545A)). To determine whether a creditor's actual reliance was justifiable, the Court applies a subjective standard that takes into account the qualities and characteristics of the particular creditor. *Johnson v. Riebesell (In re Riebesell)*, 586 F.3d 782, 791-92 (10th Cir. 2009). For reliance to be "justifiable," the creditor must still use his

---

[75] *See* Amended Findings and Conclusions (Doc. 14-1), p. 4, ¶ 29 ("In reliance upon Defendant's representations and omissions as to his purported design services, [Plaintiffs] decided to retain Defendant to design and prepare construction drawings for their home.") (SUF, ¶ 39); Amended Findings and Conclusions (Doc. 14-1), p. 16, ¶ 33 ([Plaintiffs] relied upon such statements or omissions by engaging Defendant to provide residential design services.") (SUF, ¶ 142).
[76] Amended Findings and Conclusions (Doc. 14-1), p.16, ¶ 28. SUF, ¶ 136.

or her senses and make at least a cursory examination or investigation of the surrounding facts before entering into the transaction. *Id.* at 792 (quoting *Field v. Mans*, 516 U.S. at 71). "Reliance is not justifiable if the facts and circumstances make it apparent from a cursory glance that the representations are false, or where the creditor 'has discovered something which should serve as a warning that he is being deceived.'" *Penix v. Parra (In re Parra),* 483 B.R. 752, 769 (Bankr. D.N.M. 2012) (quoting *Field v. Mans,* 516 U.S. at 71). A creditor's burden to demonstrate justifiable reliance "is relatively low . . . [and] . . . the creditor need not prove that he acted consistent with ordinary prudence and care." *Stanley-Snow*, 405 B.R. at 23 (quoting *In re Aoki,* 323 B.R. 803, 816 (1st Cir. BAP 2005)).

Here, the Amended Findings and Conclusions include findings that Plaintiffs "had no knowledge or experience of the residential design industry,"[77] that Defendant "took advantage of [Plaintiffs'] lack of knowledge and experience in the residential design industry to a grossly unfair degree," [78] and that "[u]nder the circumstances, Defendant's display [at the Parade of Homes] and nondisclosures suggested that he had, in fact designed the Sun Mountain model and was in the business of home design, and [Plaintiff Janelle Brookhouser] believed that was the case."[79] These fact findings establish that Plaintiffs were inexperienced and, under the circumstances, had no reason to doubt Defendant's representations that he could prepare a residential construction design for them. From those surrounding facts, the Court can infer that Plaintiffs justifiably relied on Defendant's false representations and false pretenses when they engaged Defendant to prepare a residential construction design for their home.

---

[77] Amended Findings and Conclusions (Doc. 14-1), p.1, ¶ 2; SUF, ¶ 12.
[78] SUF, ¶ 129; Amended Findings and Conclusions (Doc. 14-1), p. 15, ¶ 22.
[79] Amended Findings and Conclusions (Doc. 14-1), p. 3, ¶ 20; SUF, ¶ 30.

4. *Plaintiffs sustained a loss caused by Defendant's fraud*

Plaintiffs suffered actual losses in the amount of $12,065.00 as a result of Defendant's false representations and false pretenses. The Amended Findings and Conclusions include findings that Plaintiffs paid a deposit of $2,500.00 in accordance with the contract, and that, as of January 2, 2018, paid Defendant a total of $12,065.00.[80] The damages portion of the Amended Findings and Conclusions likewise confirms that Plaintiffs suffered actual damages of $12,065.00.[81] Finally, the Amended Findings and Conclusions conclude that Plaintiffs relied on Plaintiff's misrepresentations or omissions "to their detriment."[82]

E. *The Amount of the Non-Dischargeable Debt*

Plaintiffs request a non-dischargeable judgment in the amount of $47,226.64, the total amount awarded in the Final Judgment entered in the State Court Action. In addition, Plaintiffs assert that they are entitled to an award of attorney's fees incurred in prosecuting this non-dischargeability action as part of their non-dischargeable claim. The Court will address each of these components in turn.

1. *The amount awarded in the Final Judgment in the State Court Action.*

The Final Judgment entered in the State Court Action awarded the following amounts:

- $24,130.00 in "compensatory" damages
- $22,441.26 in reasonable attorney's fees
- $655.38 in costs.[83]

The Amended Findings and Conclusions specify that $12,065.00 was awarded in actual damages, and that an additional $12,065.00 was awarded based on a provision in the NMUPA

---

[80] Amended Findings and Conclusions (Doc. 14-1), p. 6, ¶¶ 42 and 47; SUF, ¶¶ 52 and 57.
[81] Amended Findings and Conclusions (Doc. 14-1), p. 17, ¶ 41; SUF, ¶ 153.
[82] Amended Findings and Conclusions (Doc. 14-1), p. 16, ¶ 28; SUF, ¶ 136.
[83] Final Judgment, Doc. 14-2.

-25-

which allows an award of up to treble damages. *See* NMSA 1978, § 57-12-10(B).[84] Similarly, the award of reasonable attorney's fees and costs appears to be based on the NMUPA, though neither the Amended Findings and Conclusions nor the Final Judgment state the basis for the award of fees and costs. *See* NMSA 1978, § 57-12-10(C) ("The court shall award attorney fees and costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if the party prevails.").[85]

       Defendant argues that because the damages in the Final Judgment, including attorney's fees and costs, were awarded based on Defendant's violation of the NMUPA, which does not require proof of an intent to deceive, the Final Judgment cannot preclusively establish the amount of the non-dischargeable debt. Before giving preclusive effect to a damage award, the Court must exercise care "to ensure that all damages arise solely from the prohibited § 523(a) conduct." *Murphy v. Spencer (In re Spencer)*, Adv. No. 15-1052t, 2016 WL 1556033, at *4 (Bankr. D.N.M. Apr. 14, 2016). Under *Cohen v. de la Cruz*, 523 U.S. 213 (1998), all damages arising from a debtor's fraud, including an award of treble damages and attorney's fees, are included in the non-dischargeable debt even though such damages exceeded the value obtained by the debtor by his fraud.[86]

---

[84] Amended Findings and Conclusions (Doc. 14-1), p. 17, ¶¶ 41 and 42; SUF, ¶ 157.

[85] Because there were no grounds found by the State Court to award attorney's fees other than under the NMUPA, the Court discerns that the award of attorney's fees is based on the NMUPA. Plaintiffs have not directed the Court to any contract provision or other statutory basis that would entitle them to an award of fees and costs.

[86] *Cohen* nevertheless "requires the alleged fraud proximately caused the debt in order for it to be excepted from discharge." *Hernandez v. Musgrave (In re Musgrave)*, BAP Nos. CO-10-049, 08-25165, 2011 WL 312883, at *9 (10th Cir. BAP 2011). *See also Murphy v. Snyder (In re Snyder)*, 939 F.2d 92, 103 (2d Cir. 2019) ("[N]othing in *Cohen* bars a court from determining whether only a portion of a contested debt 'arose from' the amounts obtained through defalcation, and thus is nondischargeable."); *In re Munoz*, 592 B.R. 736, 744-45 (D. Colo. 2018) (recognizing that *Cohen* discusses two distinct concepts: "whether 11 U.S.C. § 523(a)(2)(A) is limited to the value obtained through fraud (the answer is no); and whether a portion of an allegedly nondischargeable debt 'arose from' amounts obtained by fraud[,]" and concluding that the bankruptcy court could allocate the total judgment amount awarded by the state court between amounts based on fraud and amounts based on breach of contract).

Here, it is clear that all damages the State Court awarded are damages the Court found to be attributable to Defendant's fraud. Once the State Court found that Defendant had obtained money from the Plaintiffs by making false representations and as a result of false pretenses, any debt arising from such fraud is excepted from discharge under § 523(a)(2)(A). *See Cohen*, 523 U.S. at 223. Therefore, consistent with *Cohen*, the Court may give preclusive effect to the award of damages, including the award of exemplary damages, attorney's fees, and costs awarded in the Final Judgment, even though the State Court could have awarded damages under the NMUPA without finding fraud. The findings the State Court made support each element of a non-dischargeability claim under § 523(a)(2)(A), and such findings also served as the basis for the damages award; consequently, the findings were necessarily decided in the Final Judgment based on the evidence admitted at trial and are entitled to preclusive effect to establish the amount of the non-dischargeable debt.

2.  *Attorney's fees incurred in prosecuting this non-dischargeability proceeding*

In addition to the attorney's fees and costs that were awarded in the Final Judgment, Plaintiffs request an award of attorney's fees and costs for prosecuting this non-dischargeability proceeding. In support of their request to recover attorney's fees incurred in prosecuting this adversary proceeding, Plaintiffs rely on the attorney's fees and costs provision in the NMUPA, NMSA 1978, § 57-12-10(C). Plaintiffs also cite *Kilborn v. Haun (In re Haun)*, 396 B.R. 522 (Bankr. D. Idaho 2008), a case which the court awarded attorney's fees for successfully prosecuting a non-dischargeability action, based on a state statute.

Under the "American Rule" applied in federal litigation, including bankruptcy litigation, with two major exceptions, a prevailing party is not ordinarily entitled to collect attorney's fees from his opponent. *Busch v. Hancock (In re Busch)*, 369 B.R. 614, 624 (10th Cir. BAP 2007).

-27-

The exceptions are when the parties have entered a contract that shifts attorney's fees or when a statute provides for fee shifting. *Id.* at 624-25. Thus, unless a statute or contract provides otherwise, each litigant is required to pay his or her own attorney's fees, "win or lose." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010)).

The attorney's fees provision in the NMUPA, upon which Plaintiffs rely, provides: "The court shall award attorney fees and costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if the party prevails." NMSA 1978, § 57-12-10(C). This provision allows attorney's fees for prevailing on a claim under the NMUPA; it does not apply to litigation in bankruptcy court to prove the resulting debt is non-dischargeable.

*Haun* is distinguishable. In *Haun,* on the day of the scheduled trial in the adversary proceeding, the parties stipulated to a judgment both on the debt at issue and the non-dischargeability of the debt. *Haun*, 396 B.R. at 524. The bankruptcy court reasoned that whether a party can recover attorney's fees incurred in connection with a non-dischargeability action depends on "whether the creditor plaintiff would be entitled to fees in state court for establishing those elements of the claim which the bankruptcy court finds support a conclusion of nondischargeability." *Haun*, 396 B.R. at 528.[87] However, as explained by the Idaho bankruptcy

---

[87] *See also NF Clean v. Kakal (In re Kakal)*, 596 B.R. 335, 341 (Bankr. S.D. Tex. 2019) (to be non-dischargeable, "the attorney's fees must stem from the same basis as the non-dischargeable debt."). That approach is consistent with the law in the Tenth Circuit. *See In re Burns*, 3 F. App'x 689, 690 (10th Cir. 2001) ("[A] prevailing party in a bankruptcy proceeding may be entitled to an award of attorney's fees in accordance with applicable state law if state law governs the substantive issues raised in the proceedings." (quoting *Ford v. Baroff (In re Baroff)*, 105 F.3d 439, 441 (9th Cir. 1997)); *Busch*, 369 B.R. at 625 (recognizing that fees can be shifted notwithstanding the American Rule based on a contract between the parties or a state statute and concluding, consistent with *Cohen,* that the prevailing party in a non-dischargeability action could recover fees incurred in prosecuting the non-dischargeability action based on an applicable state statute); *JK Transports, Inc. v. McGill (In re McGill)*, 623 B.R. 876, 901-02 (Bankr. D. Colo. 2020) (awarding attorney fees and costs to prevailing party as part of the non-dischargeable judgment based on an applicable state statute).

court, the reasoning in "*Haun* only allows for fees in establishing the **claim** under state law, and not the nondischargeability of that claim." *Krystal v. Haynie (In re Haynie)*, 621 B.R. 456, 472 (Bankr. D. Idaho 2020) (emphasis in original), *aff'd,* 624 B.R. 872 (9th Cir. BAP 2021). When a plaintiff has already litigated his or her claim in state court and obtained a judgment including a statutory award of attorney's fees and costs, the only legal determination left for the bankruptcy court is the question of nondischargeability. *Id.* In that situation, a plaintiff is not entitled to an additional, separate award of attorney's fees for prevailing on its nondischargeability claim.

Here, the fee shifting statute at issue only allows attorney's fees for prevailing on a claim under the NMUPA. That claim was fully adjudicated by the State Court. Plaintiffs incurred no attorney's fees in this adversary proceeding to establish their claim under the NMUPA. Therefore, under the American Rule, Plaintiffs are not entitled to an award of attorney's fees for establishing in this adversary proceeding that the debt Defendant owes them is nondischargeable.[88]

## CONCLUSION

Based on the foregoing, the Court concludes that Plaintiffs are entitled to summary judgment determining that the Amended Findings and Conclusions resulting in the entry of the Final Judgment entered in the State Court Action are entitled to issue preclusive effect establishing Plaintiffs' non-dischargeability claim under § 523(a)(2)(A). Total damages in the amount of $47,226.64, including attorney's fees and costs awarded under the NMUPA as

---

[88] On the other hand, if Plaintiffs had initiated their non-dischargeability proceeding without having obtained a pre-petition judgment, under the NMUPA Plaintiffs could recover attorney's fees and costs incurred to prove a violation of the NMUPA even if that same proof established facts necessary to satisfy the elements of their non-dischargeability claim. *See Kakal*, 596 B.R. at 342; *see also Headrick v. Atchison (In re Atchison)*, 255 B.R. 790, 792 (Bankr. M.D. Fla. 2000) ("[I]f a bankruptcy court liquidates a claim and also determines its dischargeability under the Bankruptcy Code, the liquidated claim may include an attorney's fee component only if the contract or a statute provides for such an award.").

determined in the Final Judgment, are traceable to Defendant's fraudulent conduct and are, therefore, non-dischargeable under § 523(a)(2)(A). Having received the issue preclusive benefit of the Amended Findings and Conclusions and the Final Judgment in determining both the nature and the amount of the non-dischargeable debt, Plaintiffs are not entitled to recover additional attorney's fees and costs for successfully prosecuting this non-dischargeability proceeding based on the same fee-shifting statute. Plaintiffs did not incur any attorney's fees in prosecuting this adversary proceeding to establish their claim under the NMUPA.

The Court will enter a separate order and final judgment consistent with this Memorandum Opinion.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket:   June 11, 2024

COPY TO:

Joseph A. Brophy
Attorney for Plaintiffs
Jennings, Haug & Cunningham,LLP
2800 N. Central Ave., Suite 1800
Phoenix, AZ 85004-1049

Michael K. Daniels
Attorney for Defendant
4004 Carlisle Blvd. NE, Suite J
Albuquerque, NM  87107

Ronald E. Holmes
Attorney for Defendant
Davis Miles McGuire Gardner, PLLC
320 Gold Ave., Suite 1111
Albuquerque, NM 87102